R. C. MAHON CO. v. R. S. KNAPP CO.

PRINCIPAL AND SURETY—RIGHT OF MATERIALMAN TO SUE SURETY ON
CONTRACTOR'S BOND TO PRIVATE OWNER.

> In materialman's action against principal contractor and surety
> on its bond given to private owner as sole obligee, providing
> for performance and that principal "shall pay all persons
> who have contracts directly with" him for labor and mate-
> rials, judgment of no cause of action against surety is affirmed,
> on appeal, by equally divided court.

Appeal from Wayne; Miller (Guy A.), J.   Sub-
mitted October 20, 1932.   (Docket No. 175, Calendar
No. 36,632.)   Decided March 3, 1933.   Rehearing de-
nied June 5, 1933.

Assumpsit by R. C. Mahon Company, a Michigan
corporation, against R. S. Knapp Company, a
Michigan corporation, as principal contractor, and
Fidelity & Deposit Company of Maryland, a Mary-
land corporation, as surety, for balance due on a
contract for furnishing steel.   Judgment for plain-
tiff as to defendant contractor only.   Plaintiff ap-
peals.   Affirmed by an equally divided court.

*Wilkinson, Lowther & O'Connell,* for plaintiff.

*Lightner, Hanley, Crawford & Dodd* (*Clifford M.
Toohy* and *Dudley W. Apps,* of counsel), for defend-
ant surety.

McDONALD, C. J. (*for reversal*).   This suit was
brought to recover a balance of $4,415.70, due on a
contract for furnishing structural steel in the erec-
tion of a private building in the city of Detroit.   The

plaintiff's contract was with R. S. Knapp Company, the principal contractor. The Inter-City Trucking Service, Inc., is the owner of the building. The Fidelity & Deposit Company of Maryland is surety on the principal contractor's bond to the owner, who was named obligee. This suit is against the principal contractor and the surety. The issue was tried by the court without a jury. Judgment for cause was rendered against the contractor and for no cause as to the surety. The plaintiff has appealed.

The conditions of the bond are as follows:

"Now therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The plaintiff bases its right to recover on the last condition of the bond, which provides that the principal shall pay all persons who have contracts directly with him for labor and materials. It contends that, though not expressly referred to by name as an obligee in the bond, the bond was given for its benefit as well as for the benefit of the owner, and that the language of the last condition imports a direct obligation on the part of the surety to pay for labor and materials. On these facts the plaintiff claims the right to maintain a suit in its own name against the surety.

The defendant contends that the only promise of the surety was to the obligee or owner; that the bond was not made for the benefit of the plaintiff; that he is not in privity with the surety, but merely a third party, a stranger to the contract, and therefore cannot maintain this action against the surety.

The early common law denied to a third party the right to maintain an action on a contract made for his benefit; but in modern American jurisprudence such right in proper circumstances is definitely recognized by an overwhelming weight of authority. The evolution of the law on the subject and its modern status is discussed at length in the annotation following the reported case of *Fidelity & Deposit Co.* v. *Rainer* (220 Ala. 262 [125 South. 55]), in 77 A. L. R. 13–20. On page 53, under the head "Bond of private contractor," it is said:

"The great weight of authority establishes the general rule that a person furnishing materials or labor may recover on a building contractor's bond to the owner, where it contains a condition for their benefit and is intended for their protection; although the owner is the only obligee named in the bond, and there is no express provision that it shall inure to the benefit of laborers or materialmen, or that they may avail themselves of the security thereof." Many cases are cited in support of the text on pages 54 and 55.

The general doctrine as to the right of a third party to enforce a contract made for his benefit is stated in 13 C. J., beginning on pages 705, 709, 711, as follows:

"Section 815. In most of the States the English doctrine that where a person makes a promise to another for the benefit of a third person the latter cannot maintain an action on it is not recognized to the

full extent, but it is held, subject to the qualifications hereafter stated, that the action may be maintained. This is now the prevailing doctrine in the United States."

"Section 817. In many of the cases the doctrine is stated broadly that a person may maintain an action on a promise made for his benefit, although not a party to the contract; but this statement of the doctrine is too broad. By the weight of authority the action cannot be maintained merely because the third person will be incidentally benefited by performance of the contract; he must be a party to the consideration, or the contract must have been entered into for his benefit, and he must have some legal or equitable interest in its performance."

"If the person for whose benefit a contract is made has either a legal or equitable interest in the performance of the contract, he need not necessarily be privy to the consideration. The name of the person to be benefited by the contract need not be given, if he is otherwise sufficiently described or designated. The fact that the particular person who is to benefit from the promise is not known when the promise is made is immaterial. He may be one of a class of persons if the class is sufficiently described or designated. And the fact that the person to whose benefit a promise may inure is uncertain at the time it is made, and that it is dependent on a contingency, will not deprive the person who afterward establishes his claim to be the beneficiary of the promise of the right to recover upon it."

The precise question involved in the instant case seems never to have been before the Supreme Court of Michigan, but the right in general of a third party to enforce a contract made for his benefit was considered in *Claxton* v. *Margolis,* 248 Mich. 199. The rule there stated by Mr. Justice Sharpe is that a third person may enforce a contract made for his

benefit if there is "some obligation or duty resting upon the promisor to the third person, giving him a legal or equitable claim to the benefit of the promise."

There is no doubt about the law. The question is whether it is applicable to the terms of the bond in question.

It will be noted that the bond contains five conditions. The first four are plainly obligations to the owner only. They are sufficient in themselves to indemnify him against every conceivable loss. It was not necessary to add the fifth condition for his protection, so it must have been intended for the benefit of the third persons, labor or materialmen, who had dealings with the principal contractor, for they are the persons mentioned. Its language imports that it was for their benefit. "And shall pay all persons who have contracts directly with the principal for labor or materials."

The plaintiff had a contract directly with the principal, and this condition in the bond was a guaranty by the surety that the principal would perform. The promise of the surety was a direct benefit to the plaintiff, and was evidently intended to be such, for it was made after the owner had been fully provided for. As to the owner, it was mere surplusage, for it added nothing to the promises in the preceding portion of the bond, all of which were for his benefit. If the fifth condition had been entirely omitted from the bond, the owner would have been as fully indemnified as he is with it in the bond. This condition is not surplusage or an accidental insertion by the party who drafted the bond. The bond is a standard form adopted by the American Institute of Architects and approved by the National Contractors' Organization. We may assume that it contains no sur-

plusage or meaningless matter. It was put in the bond for a purpose, and the purpose is obvious from the plain language used. It was intended as a guaranty by the surety that all persons dealing directly with the principal contractor would be paid for the materials they furnished or the labor they performed. It was a promise for their direct benefit. It was a guaranty for the benefit of a class, and plaintiff came within that class.

We think a proper construction of the bond shows that the intention of the parties as expressed in the fifth condition was not only to indemnify the owner but to guarantee payment to materialmen who dealt directly with the principal contractor.

Contractors' bonds, identically like this one, were similarly construed in *Byram Lumber & Supply Co. v. Page,* 109 Conn. 256 (146 Atl. 293); *Hartford Accident & Indemnity Co. v. Knox Net & Twine Co.,* 150 Md. 40 (132 Atl. 261); and on rehearing in *Fidelity & Deposit Co. v. Rainer,* 220 Ala. 262 (125 South. 55), reported also in 77 A. L. R. 13.

The plaintiff was a real party in interest, and had a right to bring suit in its own name. Judicature act (3 Comp. Laws 1929, § 14010).

"The provision of the judicature act referred to evidently intended to enlarge the remedy of a beneficiary in contracts so as to enable him to enforce his beneficial interest directly by suit in his own name." *Smith v. Oosting,* 230 Mich. 1.

See, also, *Getchell & Martin Lumber Co. v. Peterson & Sampson,* 124 Iowa, 599 (100 N. W. 550).

Other questions not discussed are considered as having no merit or are settled in cases cited.

The judgment should be reversed, and the cause remanded for entry of judgment against the surety for the undisputed balance on plaintiff's contract. The plaintiff should have costs.

CLARK, SHARPE, and WIEST, JJ., concurred with McDONALD, C. J.

FEAD, J. (*for affirmance*).   In my opinion the judgment must be affirmed.   The bond was not made for the benefit of plaintiff, nor was there any "obligation or duty resting upon the promisor to the third person, giving him a legal or equitable claim to the benefit of the promise."   *Claxton* v. *Margolis,* 248 Mich. 199.

The bond provides that the principal and surety "are held and firmly bound unto Inter-City Trucking Service, Incorporated."   It contains no provision for enforcement by anyone else.   It was given for the benefit of the owner, to insure performance of the contract at the agreed cost.   The instrument must be construed as a whole and in the light of the fact that persons furnishing labor and materials to the building have protection by way of mechanic's lien.   If all persons who could have "claims and demands incurred for the same" may sue on the bond, their combined actions could exhaust it and leave the owner remediless.   It is not a reasonable construction of the bond that it was intended to give contractors, materialmen, and laborers security, in addition to the right of lien, which could impair the purpose of the bond to protect the owner.

The contractor owed no legal or equitable duty or obligation to plaintiff in connection with the bond. Its obligation to plaintiff arose from and was measured by a separate and distinct contract between them.   The security of plaintiff for payment rests upon the provisions of such separate contract together with the lien law.

POTTER, NORTH, and BUTZEL, JJ., concurred with FEAD, J.